UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MELBA HUDSON,** | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No: |
| | ) |
| **AMERICAN AIRLINES, INC.,** | ) |
| Defendant. | ) |

**COMPLAINT AND JURY DEMAND**

Plaintiff, Melba Hudson, by and through undersigned counsel, alleges as follows against Defendant American Airlines, Inc.:

**PARTIES, JURISDICTION & VENUE**

1. Plaintiff Melba Hudson is a Black male, over the age of 50 at all relevant times. He worked out of the Chicago base for years before transferring to the Philadelphia base in August 2024, where Jabari Black (Black male, under 40) became his immediate supervisor. In Chicago, his supervisor changed frequently, but during the months prior to August 2024, he was directly supervised by Nick Lopez (Hispanic male, under 40).

2. Defendant American Airlines, Inc., is headquartered in Texas, operates in this District, and receives federal funding through the Department of Transportation's Essential Air Service program, subjecting it to the Rehabilitation Act.

3. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as there are issues of Federal Law.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(c) as the Defendant is subject to the personal jurisdiction of this Court and because many of the acts giving rise to this action occurred in this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. On or about April 16, 2025, Hudson timely filed a Charge of Discrimination on the basis of race, age, and retaliation with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the acts complained of. (Attached to this Complaint as Exhibit A).

6. The EEOC issued a Dismissal and Notice of Rights on April 22, 2025, and Hudson files this action within 90 days of his receipt of that notice. (Attached to this Complaint as Exhibit B).

7. Mr. Hudson has exhausted his administrative requirements by filing his Charge of Discrimination with the EEOC within 300 days of the date of the acts complained of and by filing the instant lawsuit within 90 days of receiving the Notice of Rights.

## FACTUAL ALLEGATIONS

**Plaintiff's Background and Qualifications**

8. Hudson was hired by Defendant in March 1991 as a ticket agent and became a flight attendant with American Airlines in March 2000. At all times, he performed his duties satisfactorily.

9. Through his seniority, and especially after a significant pay raise in Fall 2024, Hudson earned over $90.00 per hour, with additional benefits based on length of service.

10. During the last two years of his tenure, AA had a surge in hiring, with most new flight attendants in their 20s and 30s.

**Disability and Protected Activity**

11. In 2024, Hudson began experiencing significant difficulty seeing in direct sunlight while performing his in-flight duties. On one such occasion, after takeoff, Hudson pulled down the cabin shade to be able to see and perform his job safely.

12. He was under doctor's care, diagnosed with cataracts, and approved for upcoming cataract surgery.

2

13. Plaintiff promptly informed his Inflight Crew Manager, Jabari Black, and provided medical documentation indicating his upcoming surgery and the nature of his impairment. This included he statement that at times he could not see well and could only see figure while in flight with the sun exposed. He also stated that the sun blinded him.

14. Despite being a qualified individual with a disability, Plaintiff was regarded as disabled by Defendant and treated adversely on that basis.

**Discriminatory Comments and Differential Treatment**

15. Throughout his employment, Plaintiff was subjected to repeated age-based harassment and slurs, including:

    - "Don't you think you are too old to fly?"

    - "You have the age and the years to retire."

16. Despite his exemplary record, Defendant delayed significant wage increases until Fall 2024.

17. Non-Black and significantly younger flight attendants were not subjected to similar comments or adverse actions.

**Retaliatory Conduct and Disciplinary Actions**

18. During his final year, Hudson challenged disciplinary actions with the assistance of his union, filed numerous grievances, and raised concerns—including reports about poor performance of non-Black flight attendants—with the Professional Standards Office.

19. Defendant investigated and disciplined Hudson more harshly than similarly situated non-Black, younger flight attendants. The comparators were not subject to the same disciplines, despite similar or more egregious conduct.

20. Plaintiff also reported management and co-worker misconduct internally, engaging in protected activity under Title VII.

21. On December 3, 2024, Defendant terminated Hudson's employment, citing pretextual reasons. At the time of termination, he was forced to take an early pension, losing both vesting and significant future benefits.

22. Hudson's union exhausted the internal grievance process but declined to advance his challenge further, advising him to pursue legal remedies.

### COUNT I: DISABILITY DISCRIMINATION – REHABILITATION ACT

23. Plaintiff incorporates by reference the preceding paragraphs.

24. Plaintiff is and was at all relevant times an individual with a disability (cataracts, qualifying as an impairment substantially limiting seeing and having heart complications surrounding a heart attack during his time with American Airlines).

25. Defendant was aware of Plaintiff's disability. Hudson notified the company, presented medical documentation to supervisor Jabari Black, and disclosed his need for surgery.

26. Plaintiff was qualified for his flight attendant position and performed satisfactorily.

27. Despite this, Defendant subjected Plaintiff to negative job actions, including but not limited to:

    a. Documented "operational delay", performance write-ups, final warnings, and a termination dated December 3, 2024.

28. These adverse actions materially altered the terms and conditions of his employment, including his pay, job duties, benefits, and ultimately, employment status.

29. But for Plaintiff's disability (and/or being regarded as disabled), Defendant would not have taken such actions. Similarly situated younger, non-Black, non-disabled flight attendants were treated more favorably, not disciplined as harshly, or terminated.

30. Defendant's stated reasons are pretextual; the discipline and termination were because of Plaintiff's disability, in violation of the Rehabilitation Act.

### COUNT II: DISABILITY RETALIATION – REHABILITATION ACT §504

31. Plaintiff incorporates by reference the preceding paragraphs.

32. Plaintiff engaged in protected activity by: requesting accommodations, disclosing his disability and scheduling for surgery, and providing supporting medical documentation.

33. After these activities, Defendant: increased disciplinary scrutiny, issued final warnings, and proceeded to termination on December 3, 2024.

34. The discipline and termination occurred shortly after his disclosure, supporting a causal connection (temporal proximity).

35. Similarly situated non-disabled employees who did not request accommodations or disclose or have a disability or perceived disability were not subjected to such harsh discipline or termination for comparable alleged conduct.

36. But for Plaintiff's protected activity under the Rehabilitation Act, Defendant would not have retaliated against him.

37. Defendant's actions constitute unlawful retaliation in violation of §504 of the Rehabilitation Act.

### COUNT III: RACE DISCRIMINATION – TITLE VII

38. Plaintiff incorporates by reference the preceding paragraphs.
39. Plaintiff is Black, a member of a protected group.
40. Plaintiff had a long positive tenure, performed duties out of Chicago before his transfer to Philadelphia in August 2024.
41. Plaintiff was subjected to documented adverse employment actions, including repeated written discipline and termination, while similarly situated non-Black flight attendants were not disciplined or terminated for similar or greater infractions.
42. Examples of discipline in 2024:
    - FA delay on August 27, 2024, operational delay.
    - Final warnings for minor or disputed conduct in July–August 2024.

5

- o Termination for alleged minor performance violations and "dishonesty" per December 3, 2024, letter.

43. Defendant's motives were, at least in part, because of Plaintiff's race. The pattern and severity of discipline imposed upon Plaintiff, compared to non-Black coworkers in similar situations, establish discriminatory intent (disparate treatment).

44. But for his race, Plaintiff would not have been disciplined or terminated.

45. The above constitutes race discrimination in violation of Title VII.

## COUNT IV: AGE DISCRIMINATION – ADEA

46. Plaintiff incorporates by reference the preceding paragraphs.

47. Plaintiff is over 50, protected under the Age Discrimination in Employment Act (ADEA).

48. Plaintiff was repeatedly subjected to age-related comments by management and colleagues (e.g., "don't you think you are too old to fly?", "you have the age and the years to retire").

49. In the last two years, Defendant undertook a major surge in hiring, bringing in large numbers of younger flight attendants in their 20s–40s, who were treated favorably and not disciplined or terminated under similar circumstances.

50. Plaintiff, despite over 20 years of experience, did not receive a substantial raise until Fall 2024 and was ultimately terminated.

51. Defendant took adverse actions against Plaintiff, including excessive scrutiny, written warnings, and termination, while younger flight attendants engaged in similar (or greater) infractions without the same degree of discipline.

52. But for Plaintiff's age, Defendant would not have terminated his employment.

53. Defendant's stated reasons are pretext; younger employees were retained, promoted, and not disciplined as harshly for the same behavior.

54. The discipline and termination constitute age discrimination in violation of the ADEA.

## COUNT V: TITLE VII RETALIATION

55. Plaintiff engaged in protected activity, including:

    a. Filing multiple grievances with union representatives regarding discipline and performance warnings throughout 2024.

    b. Reporting concerns to the professional standards office, including disparate discipline between Black and non-Black (and younger) flight attendants.

56. Defendant was aware of these activities.

57. After Plaintiff's internal and external complaints, Defendant escalated discipline, failed to investigate his concerns, and ultimately terminated his employment (December 3, 2024), materially altering his terms and conditions of employment.

58. The escalation of adverse actions followed closely in time to his protected activities, supporting a strong causal link.

59. Similarly situated employees who did not engage in protected activity were not disciplined or terminated as Plaintiff was.

60. But for his protected activity, Defendant would not have retaliated against Plaintiff.

61. Defendant's adverse actions were retaliatory and in violation of Title VII.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the following relief:

- Reinstatement to his previous position, with full seniority, benefits, and pension rights.
- Back pay, front pay, and all lost wages/benefits, including retirement and health coverage.
- Compensatory and punitive damages, as allowed by law.
- Attorneys' fees and costs.
- Prejudgment and postjudgment interest.
- Any additional relief the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

**DATE: July 21, 2025**

Respectfully submitted,
/s/ Chiquita Hall-Jackson

Chiquita Hall-Jackson, Esq.

Chiquita Hall-Jackson
Attorney for Plaintiff
Hall-Jackson & Associates, P.C.
180 W. Washington St., Suite 820
Chicago, IL 60602
312-255-7105