IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MELBA HUDSON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.   25 C 8327 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| AMERICAN AIRLINES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Melba Hudson worked as a flight attendant for defendant American Airlines, Inc. for nearly 25 years.   He alleges that he is black, that he is over 50 years old, and that he was recently diagnosed with cataracts.   He also alleges that defendant recently investigated him, disciplined him, and ultimately fired him because of those characteristics, and because he challenged the disciplinary actions taken against him, filed numerous grievances, and reported "management and co-worker misconduct."   Plaintiff thus filed a complaint, asserting five counts: a claim for disability discrimination under the Rehabilitation Act of 1973 (the "Rehabilitation Act" or the "Act"), 29 U.S.C. § 701 <u>et seq.</u> (Count I); a claim for disability retaliation under "section 504" of the Rehabilitation Act, 29 U.S.C. § 794 ("section 504" is the common name derived from the original Public Law number and Section number assigned when the Rehabilitation Act was passed in 1973) (Count II); a claim for race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e <u>et seq.</u> (Count III); a claim for age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 <u>et seq.</u> (Count IV); and a claim for retaliation under Title VII (Count V).

Defendant moves to dismiss Counts I and II—the Rehabilitation Act claims—for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Plaintiff opposes. For the following reasons, the court denies the motion.

## BACKGROUND

Plaintiff alleges the following facts in his complaint that are relevant to Counts I and II, and which are taken as true in resolving defendant's motion. Alam v. Miller Brewing Co., 709 F.3d 662, 665-66 (7th Cir. 2013). Plaintiff is black and is over 50 years old. Defendant hired him in 1991 as a ticket agent. Nine years later, he became a flight attendant for defendant.

In 2024, plaintiff "began experiencing significant difficulty seeing in direct sunlight while performing his in-flight duties." At some point, he was diagnosed with cataracts and approved for cataract surgery. Plaintiff "promptly informed" his manager of this, and "provided medical documentation indicating his upcoming surgery and the nature of his impairment." So defendant was aware of his disability.

Plaintiff, though, remained "qualified for his flight attendant position and performed satisfactorily." Yet defendant "subjected Plaintiff to negative job actions, including": "document[ing]" him for "operational delay" (presumably meaning he was determined to have caused a flight's late departure or arrival), writing him up for performance issues, giving him "final warnings," and ultimately firing him on December 3, 2024.

"But for Plaintiff's disability (and/or being regarded as disabled), Defendant would not have taken such actions." Indeed, "[s]imilarly situated younger, non-Black, non-disabled flight attendants were treated more favorably." And defendant's "stated reasons" for its actions are "pretextual: the discipline and termination were because of [his] disability."

2

Because defendant "receives federal funding through the Department of Transportation's Essential Air Service program," defendant is subject to the Rehabilitation Act. And so based on the above facts, plaintiff alleges in Count I that defendant has engaged in "disability discrimination" in violation of the Rehabilitation Act.

Plaintiff further asserts in Count II that defendant engaged in "disability retaliation" under the Rehabilitation Act—specifically section 504 of the Act. According to plaintiff, he "engaged in protected activity by: requesting accommodations, disclosing his disability and scheduling for surgery, and providing supporting medical documentation." And shortly thereafter, defendant subjected him to "increased disciplinary scrutiny, issued final warnings," and fired him. Yet, "[s]imilarly situated non-disabled employees . . . were not subjected to such harsh discipline or termination for comparable alleged conduct." Plaintiff thus alleges that defendant's retaliatory actions constitute unlawful retaliation under section 504.

## DISCUSSION

Defendant has moved to dismiss Counts I and II for failure to state a claim under Fed. R. Civ. P. 12(b)(6). A motion to dismiss for failure to state a claim under Rule 12(b)(6) challenges the sufficiency of the complaint. See Gibson v. City of Chi., 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion, the complaint must provide the defendant with fair notice of a claim's basis and must be facially plausible. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of

3

misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." Id. at 679 (cleaned up).

Plaintiff alleges in Counts I and II that defendant engaged in "disability discrimination" and "disability retaliation," respectively, in violation of the Rehabilitation Act. The Rehabilitation Act, 29 U.S.C. § 701 et seq., "establishes a comprehensive federal program aimed at improving the lot of the handicapped." Consol. Rail Corp. v. Darrone, 465 U.S. 624, 626 (1984). "Among its purposes are to 'promote and expand employment opportunities in the public and private sectors for handicapped individuals and place such individuals in employment.'" Id. (quoting 29 U.S.C. § 701(8)).

"To further these purposes, Congress enacted § 504 of the Act." Id. Section 504 provides that: "No otherwise qualified individual with a disability . . . shall, solely by reason of . . . his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). "A person who has been excluded, denied, or discriminated against may sue the recipient of federal funds to enforce her rights." Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana, 786 F.3d 510, 516 (7th Cir. 2015) (citing 29 U.S.C. § 794a(a)(2)).

In addition to section 504, Congress also enacted other sections to advance the Act's purposes, including:

- Section 501, which "imposes an affirmative duty upon federal agencies to structure their procedures and programs so as to ensure that handicapped individuals are afforded equal opportunity in both job assignment and promotion," McWright v. Alexander, 982 F.2d 222, 225 (7th Cir. 1992) (cleaned up) (citing 29 U.S.C. § 791);

4

- Section 503, which "allows an individual to file a complaint with the Department of Labor alleging that a federal contractor . . . has 'failed or refuses to comply with the provisions of a contract with the United States, relating to employment of individuals with handicaps . . .,'" Andrews v. Consol. Rail Corp., 831 F.2d 678, 679 (7th Cir. 1987) (quoting 29 U.S.C. § 793); and

- Section 508, which "imposes requirements on federal departments and agencies to ensure that all electronic and information technology is accessible to individuals with disabilities." Meyer v. Walthall, 528 F. Supp. 3d 928, 943 n.2 (S.D. Ind. 2021) (citing 29 U.S.C. § 794d(a)).

Defendant argues that, unlike Count II and its express reference to section 504, Count I fails to specify which section of the Rehabilitation Act plaintiff alleges supports his disability discrimination claim. But, defendant argues, plaintiff cannot possibly rely on sections 501, 503, or 508 because sections 501 and 508 apply to only the federal government (not to a private entity like defendant), and section 503 does not provide a private right of action. In response, plaintiff clarifies that he is bringing both Counts I and II "solely under Section 504." But, defendant contends, that does not "save" Count I.

That is because, defendant argues, neither Count I nor Count II plead a plausible section 504 claim. Again, section 504 "protects a qualified individual with a disability from discrimination solely because of his disability in any program receiving federal financial assistance." Branham v. Snow, 392 F.3d 896, 902 (7th Cir. 2004) (cleaned up) (citing 29 U.S.C. § 794(a)). "To make out a prima facie case under" section 504, "plaintiff must show: [1] that he suffers from a disability as defined under the Act; [2] that he was otherwise qualified for the job; [3] that he was involved in programs receiving federal financial assistance; and [4] that he was excluded from participation, denied benefits, or otherwise discriminated against solely because of his disability." Id. (cleaned up) (bracketing added). What differentiates the prima facie case under the Rehabilitation Act from the prima facie case under the similarly purposed Americans

5

with Disabilities Act is the third element—"the additional showing that [the plaintiff] was involved in a program which received federal financial assistance." Jackson v. City of Chi., 414 F.3d 806, 811 n.2 (7th Cir. 2005).

As for that third element, in Darrone, the Supreme Court "read 'program or activity receiving Federal financial assistance'" in section 504 "to narrow the reach of the Rehabilitation Act's discrimination protections." T.S. by & through T.M.S. v. Heart of CarDon, LLC, 43 F.4th 737, 745 (7th Cir. 2022) (discussing Darrone). In particular, the Supreme Court stated that "this language limits the ban on discrimination to the specific program that receives federal funds." Darrone, 465 U.S. at 636. "This meant that, to sue under section 504, the purported victim had to have been discriminated against by that discrete program or activity." T.S., 43 F.4th at 745. But "Congress did not agree." Id. "Finding that the Supreme Court's decisions had 'unduly narrowed or cast doubt upon . . . the broad, institution-wide application of' antidiscrimination-in-federal-funding statutes like the Rehabilitation Act, Congress responded with the Civil Rights Restoration Act of 1987 ["CRRA"]." Id. (citing Pub. L. No. 100-259, § 2(1), 102 Stat. 28, 28 (1988)).

Relevant here, after the CRRA, section 504 now defines "program or activity" as "mean[ing] all of the operations of . . . an entire corporation . . . (i) if assistance is extended to such corporation . . . as a whole . . .; or . . . (ii) which is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation." 29 U.S.C. § 794(b)(3)(A)(i)-(ii). "The CRRA therefore clearly 'broadened the coverage' of the relevant antidiscrimination provisions." T.S., 43 F.4th at 746. Nevertheless, if a corporation does not

fall into one of the two categories, then section 504 still limits the discrimination ban to the specific program that receives federal funds.

Defendant's sole assertion for dismissal here is that plaintiff has failed to allege the third element—that is, that plaintiff was involved in a program that received federal financial assistance. According to defendant, plaintiff's complaint alleges that defendant "receives federal funding through the Department of Transportation's Essential Air Service program, subjecting it to the Rehabilitation Act." (Quoting the complaint). "The Essential Air Services Program," defendant explains, "provides subsidies to airlines providing flights to small communities designated as essential by the Department of Transportation." (Citing 49 U.S.C. 41731 et seq.). Defendant contends that "liability under Section 504 can only attach to alleged discrimination that occurred in connection with the Essential Air Services Program." But, defendant argues, plaintiff "fails to allege that his employment" and later firing were "in connection with the Essential Air Service Program"—or any other program receiving Federal financial assistance. Defendant therefore concludes that Counts I and II fail to state a claim and must be dismissed.

Plaintiff responds, arguing that he has pleaded enough in his complaint by alleging "that Defendant receives federal funding through the [Essential Air Service] program." And in any event, he asserts, even though the complaint expressly relies on the Essential Air Service Program, defendant also received federal financial assistance: (1) "under the 2020 Coronavirus Aid, Relief, and Economic Security . . . Act, including . . . payroll support loans directly used for employee compensation"; and (2) "under one or more 'Consolidated Appropriations Acts,' . . . that fund vital . . . needs in the commercial aviation sector." According to plaintiff, these

"funding sources"—along with the Essential Air Service Program—"serve[ ] as a legal hook for application of Section 504's nondiscrimination mandate to [defendant's] employment practices relating to [plaintiff]."

In reply, defendant first argues that plaintiff cannot "amend his Complaint in his Response to add additional potential sources of federal funds."  (Citing Pirelli Armstrong Tire Corp. Ret. Med. Benefits Trust v. Walgreen Co., 631 F.3d 436, 448 (7th Cir. 2011)).  Defendant then reiterates its opening-brief arguments.  It contends that plaintiff "merely alleges that [defendant] as a whole 'receives federal funding through the Department of Transportation's Essential Air Service program, subjecting it to the Rehabilitation Act.'"  (Quoting complaint). But, defendant asserts, "nowhere in [plaintiff's] Complaint does [he] allege that his employment and subsequent termination from [defendant] was in connection with a program or activity receiving funding from the [Essential Air Service] program."  And this is fatal to plaintiff's claim, defendant says, because "[c]ourts . . . have uniformly held that the plain language of 29 U.S.C. § 794(a) requires a Section 504 plaintiff to allege that he participated or was involved in a specific program or activity receiving federal financial assistance when he experienced disability discrimination or disability-based retaliation."  (Citing Novak v. Bd. of Trustees of S. Illinois Univ., 777 F.3d 966, 974 (7th Cir. 2015); Darrone, 465 U.S. at 636; Reed v. Columbia St. Mary's Hosp., 915 F.3d 473, 484 (7th Cir. 2019)).

The court agrees with defendant that plaintiff cannot amend his complaint through his response, but it disagrees that plaintiff needed to plead more at this stage to state a section 504 claim.  The cases that defendant points to do not support the notion that a section 504 plaintiff must allege that he participated in a specific program receiving federal financial assistance.  The

"procedural posture" in <u>Darrone</u>, for example, was summary judgment, and the Supreme Court there expressly declined to "consider whether federal financial assistance was received by the 'program or activity' that discriminated against" the plaintiff. 465 U.S. at 636. <u>Novak</u> and <u>Reed</u> were also at the summary judgment stage, and those cases at most support the proposition (discussed above) that, to make a <u>prima facie</u> case under section 504, a plaintiff must <u>show</u> that the program in which he was involved received federal financial assistance. See <u>Novak</u>, 777 F.3d at 974 (explaining in affirming summary judgment that "to make out a prima facie case of discrimination" under the Rehabilitation Act, a plaintiff must show "that the program in which he was involved received federal financial assistance"); <u>Reed</u>, 915 F.3d at 484 (explaining in reversing grant of summary judgment that "[f]our elements must be satisfied to establish a violation of Section 504," including that "the program must receive federal financial assistance").

But a prima facie "element[ ] set[s] out an evidentiary standard, not a pleading rule." <u>Thomas v. JBS Green Bay, Inc.</u>, 120 F.4th 1335, 1338 (7th Cir. 2024). And the Supreme Court has "never indicated that the requirements for establishing a prima facie case . . . also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." <u>Id.</u> (quoting <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 511 (2002)). "That something must be proved (if plaintiff is to win) does not imply that it must be alleged in the complaint." <u>Id.</u> Or put another way: "Lists of things that plaintiffs need to prove concern *evidence* (at summary judgment and trial); they must not be treated as demands for longer and more detailed pleadings." <u>Id.</u> (emphasis in original) (reversing dismissal of Title VII claim); see also <u>Angel v. Vill.</u>, No. 24 C 1876, 2025 WL 416803, at *2 (N.D. Ill. Feb. 6, 2025) ("A Plaintiff need not

9

plead all of the elements of a prima facie case of discrimination under . . . the Rehabilitation Act[

].” (cleaned up)).[1]   Rather, “the complaint need contain only factual allegations that give the

defendant fair notice of the claim for relief and show the claim has ‘substantive plausibility.’”

Runnion, 786 F.3d at 517.

   The court’s analysis in Runnion is instructive here.   The plaintiff there, like plaintiff

here, filed a complaint asserting a claim (against the Girl Scouts) under section 504 of the

Rehabilitation Act.   Id. at 516.   “In her initial complaint, [the plaintiff] alleged without more

that the Girl Scouts are ‘a recipient of federal financial assistance within the meaning of 29

U.S.C. § 794.’”   Id. at 517 (quoting the initial complaint).   The Girl Scouts, like defendant here,

then “promptly moved to dismiss that complaint under Federal Rules of Civil Procedure . . .

12(b)(6) (failure to state a claim), arguing that [the plaintiff] had not alleged sufficiently that they

received federal financial assistance and were covered by the Rehabilitation Act.”   Id.   The

district court granted the motion, finding that the plaintiff’s “complaint had not alleged with

sufficient factual detail that the Girl Scouts received federal financial assistance within the

meaning of 29 U.S.C. § 794(b).”   Id.   “Though [the plaintiff] tried to argue [in response to the

motion] that the defendant organization received financial assistance as a whole or was

_____

[1]   Defendant cites Stevens v. Skenandore, where the court stated that a plaintiff asserting “a
claim under the Rehabilitation Act . . . must allege . . . (4) the program or activity in question
receives federal financial assistance.”   234 F.3d 1274 (Table), 2000 WL 1069404, *2 (7th Cir.
2000) (emphasis added).   But that unpublished order affirming the dismissal of a pro se
complaint notably predates Swierkiewicz and its distinguishing between prima-facie evidentiary
standards, on the one hand, and pleading standards, on the other, as well as the later Seventh
Circuit cases defendant cites that frame the section 504 elements as being part of the prima facie
case.   And as explained further below, plaintiff has adequately alleged that defendant receives
federal financial assistance.

principally engaged in providing education or social services, the district court concluded that she had failed to allege facts supporting either theory." Id.

This conclusion troubled the Seventh Circuit. The court noted: "The conclusion that [the plaintiff] needed to allege in her complaint facts supporting specific legal theories was problematic, to say the least." Id. "Even after [*Twombly* and *Iqbal*]," the court explained, "the Federal Rules of Civil Procedure do not require code pleading"—that is, "plead[ing] the elements of a cause of action along with facts supporting each element." Id. The complaint instead "need contain only factual allegations that give the defendant fair notice of the claim for relief and show the claim has 'substantive plausibility.'" Id. (quoting Johnson v. City of Shelby, 574 U.S. 10, 12 (2014) (per curiam)). Despite the district court's "problematic dismissal," though, the Seventh Circuit ultimately did not need to decide whether the district court erred in dismissing the initial complaint: the plaintiff's appeal challenged only the district court's rejection of her subsequent amended complaint. Id. at 518.

Still, this court cannot ignore that the Runnion court seemed poised to allow a section 504 claim to proceed that merely pleaded that the defendant entity was "a recipient of federal financial assistance within the meaning of 29 U.S.C. § 794." Plaintiff's complaint here pleads with even more specificity than the original complaint in Runnion. Again, plaintiff's complaint alleges that defendant "receives federal funding through the Department of Transportation's Essential Air Service program, subjecting it to the Rehabilitation Act." This is sufficient to state his section 504 claims at this stage. The fact of the matter is that "[u]nlike allegations relating to matters within [plaintiff's] personal knowledge, such as the nature and extent of [his] disabilities, details regarding [defendant]'s receipt of federal funding will likely need to be sought through

11

formal discovery."  See Moore v. Equity Residential Mgmt., L.L.C., No. 16-CV-07204-MEJ,

2017 WL 897391, at *4 (N.D. Cal. Mar. 7, 2017) (denying motion to dismiss and rejecting

argument that the plaintiffs' allegation that the "Defendants were recipients of federal funding

within the meaning of the Rehabilitation Act" failed to state a claim under the Rehabilitation

Act).

In the end, "[d]efendant may produce evidence [that] it does not receive federal funds

within the meaning of the Rehabilitation Act"—or point to the absence of evidence that plaintiff

was involved in a program that received federal funds within the meaning of the Rehabilitation

Act—"and move for summary judgment on this issue."  Id.  Indeed, the two cases that

defendant relies on in which courts analyzed section 504 claims involving the Essential Air

Services Program were decided at the summary judgment stage.  See Jacobson v. Delta Airlines,

Inc., 742 F.2d 1202, 1204 (9th Cir. 1984) (affirming district court's grant of Delta's motion for

summary judgment on the Rehabilitation Act claim); Am. Disabled for Accessible Pub. Transp.

(ADAPT), Salt Lake Chapter v. SkyWest Airlines, Inc., 762 F. Supp. 320, 323-25 (D. Utah

1991) (granting SkyWest's motion for partial summary judgment on the Rehabilitation Act

claim).  "At this point, however, the court denies the motion to dismiss the Rehabilitation Act

claim[s] on this ground."  Moore, 2017 WL 897391, at *4 (capitalization removed).

**CONCLUSION**

For the above reasons, the court denies defendant's motion to dismiss Count I and Count

II for failure to state a claim [10].   Defendant is directed to file its answer by December 29,

2025.   The parties are directed to file a joint status report using this court's form on or before

January 15, 2026.

So ordered.

ENTER:

Robert W. Gettleman
United States District Judge

DATE:     December 2, 2025

13